1
2
3
4
5
6
7
8                         UNITED STATES DISTRICT COURT

9                       SOUTHERN DISTRICT OF CALIFORNIA

10

11    CHRISTOPHER L. FRISBIE,              Civil       15-cv-1500 BAS (BGS)
                                           No.
12                          Plaintiff,
                                           **REPORT AND
13           v.                            RECOMMENDATION: DENYING
                                           PLAINTIFF'S MOTION FOR
14                                         SUMMARY JUDGMENT AND
      CAROLYN W. COLVIN,                   GRANTING DEFENDANT'S
15    Acting Commissioner of Social Security,   CROSS-MOTION FOR SUMMARY
                                           JUDGMENT**
16                          Defendant.
                                             **(ECF Nos. 17 and 18.)**
17

18    **I. INTRODUCTION**

19           On July 7, 2015, Christopher L. Frisbie ("Frisbie") filed a complaint pursuant to

20    the Social Security Act ("Act"), 42 U.S.C. § 405(g), challenging the Commissioner of the

21    Social Security Administration's ("Commissioner") denial of disability benefits.  (ECF

22    No. 1.)  On October 16, 2015, the Commissioner filed an answer.  (ECF No. 12.)  On

23    December 7, 2015, Frisbie filed a motion for summary judgment, requesting reversal of

24    the Administrative Law Judge's ("ALJ") final decision.  (ECF No. 17.)  Specifically,

25    Frisbie seeks reversal of the ALJ's denial or, in the alternative, remand for further

26    administrative proceedings on the basis that the ALJ failed to: (1) consider obesity as a

27    severe impairment; (2) consider post traumatic stress disorder, obsessive compulsive

28    disorder and major depressive disorders when determining residual functional capacity

and (3) articulate legally sufficient reasons for rejecting Plaintiff's pain and limitation testimony.  (*Id.*)

On January 8, 2016, the Commissioner filed a cross-motion for summary judgment and a response in opposition to Frisbie's motion.  (ECF. Nos. 18 and 19.)  The Commissioner argues that the ALJ's decision was supported by substantial evidence, is free from legal error, and should be affirmed.  *Id.*  On January 22, 2016, Frisbie filed a reply in support of his motion for summary judgment and in opposition to Respondent's cross-motion for summary judgment. [ECF No. 20.]

Pursuant to Civ. L.R. 7.1(d)(1), the Court finds the parties' cross-motions suitable for decision on the papers and without oral argument.  After careful consideration of the administrative record and the applicable law, the Court recommends that Frisbie's motion for summary judgment be **DENIED** and that Commissioner's cross-motion for summary judgment be **GRANTED**.

## II. BACKGROUND

Frisbie filed an application for supplemental security income on July 12, 2012, alleging disability beginning June 30, 2006.  (AR 223-228.)  The Social Security Administration ("SSA") denied Frisbie's application on August 21, 2012.  (AR 124-139.)  On October 4, 2012, Frisbie requested reconsideration of his application.  (AR 166-168.)  The SSA denied reconsideration on November 19, 2012.  (AR 140-154.)  Subsequently, on January 2, 2013, Frisbie requested a hearing before an ALJ.  (AR 175.)  On October 1, 2013, the ALJ, William K. Mueller held a hearing.  (AR 34.)  Frisbie appeared, represented by Attorney Jackie Slosser.  (AR 36.)  Mary Jesko, an impartial vocational expert ("VE"), also appeared and testified.  (AR 36.)

### A.  Adult Function Report

In his Adult Function report, Frisbie stated: "I have a fear of germs.  I wash my hands 30-35 times a day.  I have a huge fear of police.  I can't even be near one without feeling unprotected like I need to defend myself.  It makes me violent, especially if I get stopped when I'm riding in a vehicle and one approaches me with their hand on their gun.

2

It makes me want to punch them in defense of not getting hurt or killed by one.  They are a huge cause of my nightmares because of the accident."  (AR 292)

**B. Hearing Testimony**

At the October 1, 2013 hearing, Frisbie testified that he had not worked in the 10 years since his car accident.  He is a home-schooled high school graduate who can read and write.  Before being home-schooled, Frisbie was placed in special education classes in elementary and junior high school.  Frisbie testified that he had obtained and renewed his driver's license, although he does not drive because he is afraid of cars.  His girlfriend drives him if he needs to leave the house.  Frisbie told the ALJ at the hearing that he spends his day watching television and movies and sleeping.  Frisbie's girlfriend and her daughter clean, cook and do laundry for Frisbie, although he testified that he knows how to use the microwave and knows how to do his laundry.  He also knows how to feed, shower and dress himself, although Frisbie testified that: "it can be hard at times [to take a shower].  I've almost fallen a few times." (AR 46.)  Frisbie told the ALJ at the hearing that his legs give out sometimes and guessed that this happens up to three or four times in a month. (AR 46.) Nevertheless, Frisbie testified he is responsible for personal grooming, putting on clean clothes, brushing his hair and using mouthwash.  (AR 55.)

Frisbie testified that he sees a psychologist once a month and had recently been prescribed Latuda, which he had been taking for 2 weeks at the time of the hearing before the ALJ.  Frisbie testified that he has obsessive compulsive disorder which causes him to sanitize his hands because he does not like touching anything. (AR 48.)  He also stated that has "voices in my head, like thoughts....just weird crazy thoughts."  (AR 50.)  Frisbie could not remember when or for how long he began hearing voices, nor could he recall which doctor he told about the voices.  (AR 56.)

When the ALJ asked Frisbie about his physical pain and symptoms, Frisbie stated his left knee is worse than the right knee.  He testified that he needs a cane all the time.  He takes ibuprofen for his knee pain.  He also ices and elevates his left knee.  Frisbie testified he also experiences pain in the middle of his back and shoulder area. (AR 57-

59.)  Although he had not received injections in his knees by the time of the hearing, Frisbie testified that he was seeking a referral for the procedure and had been told that he would need knee surgery in the future.  (AR 61.)  Frisbie stated that he could only sit for 15 to 20 minutes before having to stand up due to knee pain.  (AR 62.)

The ALJ also called the Vocational Expert ("VE"), Mary Jesko, to testify.  (AR 63.)  The VE testified that Frisbie was unable to return to his past work as a fast food cook.  (AR 64-65.)  In response to the ALJ's question of whether there was work "an individual similar to Mr. Frisbie in age, education and work experience that was limited to sedentary work and was further limited to nonpublic, simple, routine tasks with only occasional contact with coworkers and supervisors" could perform, the VE testified that there were jobs available.  The specific jobs listed by the VE were: (1) final assembler; (2) lens inserter; and (3) bench hand.  (AR 65.)

## C.  Medical Records Cited By the ALJ

### 1.  Lilian Nguyen PA - Neighborhood Healthcare

On February 9, 2012, Frisbie attended a medical appointment to follow up on xrays of his knees, spine and wrists.  The Physician's Assistant noted: "Xrays show osteoarthrosis of bilat knees with joint effusions.  Pt ambulates with cane. Lspine and Tspine shows minimal degenerative changes. PT c/o of low back pain but does not take his meds as directed.  Last refill was over 4 months ago."  (AR 332.)

The Physician's Assistant also noted: "Pt has hx of OCD which includes excessive handwashings to point of severe dryness and cracking of skin. Pt also has hx of depression but w/o any suicidal or homocidal ideation. Pt reports oversleeping, feeling fatigue, not enjoying pleasurable things.  However, pt is noncompliant on meds." (AR 332.)

///

///

///

///

4

**2. Gregory M. Nicholson, M.D. - Seagate Medical Group - Psychiatric Consultative Examination**

On August 13, 2012, Frisbie underwent a comprehensive psychiatric evaluation by Dr. Gregory Nicholson, a board certified psychiatrist. (AR 361.) Dr. Nicholson summarized Frisbie's history of illness as follows:

> "The claimant stated in 2004 he was getting a ride somewhere and something happened that caused police officers to start shooting at the vehicle; the claimant ended up getting into a car accident and sustained gunshots [sic] wounds to the back and left leg and he required surgery on the leg. He is bothered by nightmares and memories of these traumatic experiences and avoids watching violent TV or movies and he feels hyper-vigilant around police officers. He stated he has attention deficit hyperactivity disorder and endorsed trouble concentrating, he is often forgetful and loses and misplaces things easily, and he often feels hyperactive. He stated he has obsessive compulsive disorder and said 'If I touch something that's not mine I have to wash my hands or use hand-sanitizer. I have to wash my hands about 200 times a day. It takes me only 2 days to go through a bottle of hand-sanitizer. I feel compelled to count things repeatedly, for example, when I'm washing my face or my neck I have to wash three times'....He is bothered by auditory hallucinations and hears voices that 'say bad things, like they tell me that I'm going to burn my house down or that I'm going to hurt my dog.' He also feels paranoid and feels afraid that someone will hurt him. He endorsed depressed mood, insomnia, decreased energy, irritability, and decreased interest in normal activities. He denied any history of suicidality. He denied any history of symptoms related to mania."

(AR 362.)

As for the evaluation, Dr. Nicholson noted that Frisbie presented for the examination neatly and casually groomed. Frisbie used a cane to walk and carried a bottle of hand sanitizer in his pocket. (AR 363.) Dr. Nicholson stated Frisbie was cooperative, made good eye contact and had no psycho motor agitation or retardation. His speech was normal. He was alert to time, place, person and purpose and appeared to Dr. Nicholson to be of average intelligence. Mr. Frisbie's thought processes were assessed by Dr. Nicholson as coherent and organized. Dr. Nicholson noted Frisbie's mood was depressed with a dysphoric affect and gave Frisbie a GAF score of 45. (AR 363-365.) Based on his examination, Dr. Nicholson opined that: "(1) The claimant is

able to understand, remember, and carry out simple one or two-step job instructions;
(2)The claimant is able to do detailed and complex instruction; (3) The claimant's ability
to relate and interact with coworkers and the public is moderately limited; (4) The
claimant's ability to maintain concentration and attention, persistence and pace is
moderately limited; (5) The claimant's ability to accept instructions from supervisor's is
mildly limited; (6) The claimant's ability to maintain regular attendance in the work place
and perform work activities on a consistent basis is mildly limited; and (7) The claimant's
ability to perform work activities without special or additional supervision is moderately
limited."  (AR 365-366.)

### 3.  William C. Eves, M.D., Inc. - Orthopaedic Evaluation

Frisbie presented on October 9, 2012, for an evaluation of his knees.  Dr. Eves
noted: "The knee problem is located in the left and right knee.  The onset was sudden
following a specific injury in a car accident in 2003.  The patient was shot in the knee by
a police officer, followed by a car accident."  (AR 371.)

At the conclusion of the orthopaedic evaluation, Dr. Eve opined:  "The patient has
evidence of bilateral osteoarthritis of the knees, based on their history, physical exam, CT
scans and radiographs that were reviewed in the office today.  They [sic] are having
significant pain in the knees that affects their daily activities.  We discussed treatment
options with the patient, including activity modification, a formal physical therapy
program, nonsteroidal anti-inflammatory drugs (NSAIDS), pain medications, an
ultrasound guided intra-articular cortisone injection, an ultrasound guided hyaluronic acid
(Supartz) series of injections, and surgical options for the knee arthritis.  The patient
wanted to proceed with the formal physical therapy program and with the ultrasound
guided intra-articular cortisone injection to each knee.  We will obtain authorization for
the physical therapy program, and the intra-articular knee cortisone injection." (AR 373.)

///
///
///

### 4.  Diane Carillo PT - Sharp Grossmont Rehabilitation Services

On February 12, 2013, Frisbie was issued a Home Exercise Program ("HEP") and discharged from physical therapy with the note that: "He feels he is able to perform his HEP and has a supportive caregiver to assist.  Therefore we will discharge his [sic] to his HEP." (AR 422.)

### 5.  Enzo Arya - Licensed Clinical Social Worker - Neighborhood Healthcare

On July 30, 2013, Frisbie presented for a followup appointment to discuss his PTSD and depression. (AR 454-55.) Frisbie's results on the Mental Status Exam were:

"APPEARANCE: appropriate.

BEHAVIOR: cooperative, agitation.

SPEECH: regular rate and rhythm.

AFFECT: guarded and frustrated.

THOUGH PROCESSES: linear, coherent.

THOUGHT CONTENT: No SI ("Suicidal Ideation")/No HI ("Homicidal Ideation"), No Hallucinations.

SUICIDAL IDEATION: none.

ORIENTATION: alert/oriented."

(AR 454-55.)

At the conclusion of the appointment, the licensed clinical social worker referred Frisbie to "psychiatric support and more intensive therapy".  (AR 455.)

**D.  ALJ's Findings**

### 1.  Legal Standard for Determination of Disability

In order to qualify for disability benefits, an applicant must show that: (1) he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other

substantially gainful employment that exists in the national economy.  *See* 42 U.S.C.   §
423(d)(1)(A), (2)(A).  An applicant must meet both requirements to be "disabled."  *Id.*
The applicant has the burden to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273,
1275 (9th Cir. 1990).

The Secretary of the Social Security Administration set forth a five-step sequential
evaluation process for determining whether a person has established his or her eligibility
for disability benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The five steps in the process
are as follows:

> 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. Does the impairment "meet or equal" one or more of the specific impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1? If so, then the claimant is disabled. If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).
>
> 5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

In steps one through four, the claimant bears the burden of proof to establish that
he is disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996); *see Parra v.
Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (finding that the claimant bears the burden "to
establish [his] entitlement to disability insurance benefits" at all times).  At step five, the
Commissioner bears the burden of proof to demonstrate that the claimant is not disabled.
*See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009) (stating
that the burden shifts to the Commissioner at step five to show that claimant can do other

kinds of work).  The Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy by "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy").  If the Commissioner meets this burden, then the claimant is not disabled.  *Bustamante*, 262 F.3d at 954.  However, if the Commissioner fails to meet this burden, then the claimant is disabled.  *Id*.

### 2.   The ALJ's Decision

On December 4, 2013, the ALJ issued his decision denying Frisbie's application for supplemental social security income.  (AR at 29.)  In arriving at his decision, the ALJ applied the Commissioner's five-step sequential disability determination process set forth in 20 C.F.R. § 416.920(a).  At step one, the ALJ found that Frisbie had not engaged in substantial gainful activity during the relevant period.  Accordingly, the ALJ found that Frisbie satisfied step one. (AR 22.)

At step two, the ALJ found that Frisbie suffered from the following severe impairments:  (1) arthritis of the knees; and (2) a learning disorder.  Thus, with regard to Frisbie's listed severe impairments, the ALJ found that Frisbie satisfied step two.  (AR 22.)

At step three, the ALJ found that Frisbie did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under medical listing 12.04.[1]  (AR 22-23.)  Specifically, the ALJ found "based on the treatment records, the report of the psychiatric consultative examiner, and the claimant's statements, ... the claimant's mental impairments caused mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episode of decompensation of

---

[1] Listing 12.04 provides: *"**Affective disorders**: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.  See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04."*

extended duration." (AR23.) The ALJ, therefore, proceeded to step four. (*Id.*)

The fourth and fifth steps require the ALJ to determine how the claimant's impairments affect the claimant's ability to perform work. To make this determination, the ALJ formulates the claimant's Residual Functional Capacity assessment ("RFC"). The RFC "is used at step four of the sequential evaluation process to determine whether an individual is able to do past relevant work," *See* 20 C.F.R. § 404.1545(a)(1) (defining an RFC as "the most [a claimant] can still do despite [his or her] limitations.") An RFC is used "at step five to determine whether an individual is able to do other work, considering his or her age, education, and work experience." Social Security Ruling ("SSR") 96-8p. Here, the ALJ found Frisbie had the RFC to perform "sedentary work as defined in 20 CFR 416.967(a)[2] except the claimant is limited to non-public, simple routine tasks; he can have occasional contact with co-workers and supervisors." (AR 23.) The ALJ noted that "in making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence." (AR 23.)

In developing the RFC, the ALJ found Frisbie was "less than fully credible" with respect to the intensity, persistence and limiting effects of his allegedly disabling impairments. (AR 24.) The ALJ explained in his decision:

> "The claimant stated he lives in a mobile home with his girlfriend and roommates, and could do the following activities of daily living: maintain his personal care, feed the dog, retrieve mail, let the dogs out, ride in a car, and watch television. The claimant admitted to the consultative examiner that he had no difficult with dressing, bathing, or hygiene. He also could manage his finances. He could go out on his own....The claimant has described daily activities that are not limited to the extent one would expect given the complaint of disabling symptoms and limitations. Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. The undersigned finds the claimant's

---

[2] 20 CFR § 416.967(a) provides: "Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

ability to participate in such activities diminishes the credibility of the claimant's allegations of functional limitations."

(AR 25.)

The ALJ also considered Frisbie's noncompliance with medications as a factor in discounting his credibility.  (AR 26.)  Specifically, the ALJ explained:

"The medical records indicate the claimant has been diagnosed with obsessive-compulsive disorder ("OCD") ... The claimant also has a history of depression without any suicidal or homicidal ideation.  However, the claimant was not compliant with his medications.  This demonstrates a possible unwillingness to do what is necessary to improve his conditions.  It may also be an indication that the claimant's symptoms were not as severe as the claimant purported.  The claimant's mental status examinations were normal. A medical report dated July 30, 2013, revealed the claimant was diagnosed with posttraumatic stress disorder, major depressive disorder and learning disorder.  The claimant was conservatively treated with medications.

A medical report, dated February 9, 2012, revealed the claimant's x-rays [sic] image of his knees showed he had osteoarthritis in his bilateral knees with joint effusions.  The claimant used a cane for ambulation.  The claimant's diagnostic tests regarding the claimant's lumbar spine and thoracic spine showed minimal degenerative changes.  It was noted that the claimant complained of low back pain but does not take his medications as directed.

This evidence of noncompliance of medications undermines the credibility of claimant's subjective complaints and alleged disability.  Although the failure to follow prescribed treatment without a good reason can be the basis for a finding that the claimant is not disabled, the undersigned considered it as a credibility factor in this case and does not base the ultimate decision in this case on this factor alone."

(AR 26.)

Additionally, the ALJ found that objective medical evidence did not support Frisbie's claims of disabling limitations to the degree he alleged.  Specifically, the ALJ noted a course of conservative treatment that included medication and physical therapy. (AR 26-27.)

Finally, in developing Frisbie's RFC, the ALJ considered opinion evidence from

the state agency physicians' report[3] and the consultative examiner's report of Dr. Gregory Nicholson.  The ALJ assigned significant weight to these reports explaining:

> "The opinions of all of these physicians are generally consistent in that they assess the claimant is able to perform a range of work at the light or less than light exertional level with some differences in the degree of specific function-by-function limitations."

(AR 26-27.)

As to Dr. Nicholson's report in particular, the ALJ stated:

> "Dr. Nicholson opined the claimant to have mild to moderate mental limitations. The undersigned finds Dr. Nicholson's opinion to be consistent with the findings and the medical records as a whole and incorporated some of the limitations in the residual functional capacity."

(AR 27.)

Next, the ALJ considered the VE's testimony to determine that while Frisbie is not able to perform past relevant work as a fast food cook, he is capable of performing the unskilled sedentary occupations such as Final Assembler, Lens Inserter and Bench Hand. (AR 29.)

## III. SCOPE OF REVIEW

Section 205(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of a final agency decision. 42 U.S.C. § 405(g).  The scope of judicial review is limited. *See id.* This Court has jurisdiction to enter a judgment affirming, modifying, or reversing the Commissioner's decision. *See id.*; 20 C.F.R. § 404.900(a)(5). The matter may also be remanded to the Social Security Administration for further proceedings.  42 U.S.C. § 405(g).

---

[3]The State Agency Physician Report of H. Amado, M.D., dated August 21, 2012, opined: "'Your condition results in some limitations in your ability to perform work related activities. While you are not capable of performing work you have done in the past, you are able to perform work that is less demanding.  We have determined that your condition is not severe enough to keep you from working.  We considered the medical and other information, your age, education, training, and work experience in determining how your condition affects your ability to work." (AR 137-38.)  *See also* State Agency Physician Report of Pamela Hawkins, Ph.D., on reconsideration dated November 19, 2012 finding no disability and the capability to do other work. (AR 140-153.)

12

The Commissioner's decision must be affirmed upon review if it is: (1) supported by "substantial evidence" and (2) based on proper legal standards. *Uklov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). If the Court, however, determines that the ALJ's findings are not supported by substantial evidence or are based on legal error, the Court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001).

Substantial evidence is more than a scintilla but less than a preponderance. *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003). It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." *Id.*; *see also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (finding substantial evidence in the record despite the ALJ's failure to discuss every piece of evidence). Moreover, "where evidence is susceptible to more than one rational interpretation," the ALJ's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. *See Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001). Nevertheless, the Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 882 (9th Cir. 2006).

## IV. DISCUSSION

In the instant motion, Frisbie argues:

(1) the ALJ erred in failing to consider obesity as a severe impairment in the sequential disability analysis and in failing to consider the effect that obesity, in combination with his other impairments, would have on his ability to work [ECF No. 17, pp. 5-7];

(2) the ALJ failed to consider his post-traumatic stress disorder ("PTSD"), obsessive compulsive disorder ("OCD") and major depressive disorder in the RFC assessment [ECF No. 17, pp. 7-10]; and

(3) the ALJ erred in failing to articulate clear and convincing reasons for

discounting his credibility. [ECF  No. 17 at pp. 11-14.]

Frisbie asks the Court to reverse the ALJ's decision and award him benefits.  (*Id.* at 14.)  In the alternative, Frisbie requests the case be remanded to the ALJ for further administrative proceedings.  *Id.*

As to Frisbie's obesity argument, Defendant contends the record did not support a finding of functional limitation due to obesity, therefore if the ALJ's failure to explicitly discuss Plaintiff's weight was error, it is harmless. [ECF No. 18-1 at pp. 3-4.]  Similarly, as to Frisbie's mental RFC, Defendant argues Plaintiff's treatment records did not support a disabling mental impairment.  Defendant also contends the ALJ did consider all of Frisbie's mental impairments regardless of their severity. [ECF No. 18-1 at pp.4-6.]  Finally, with respect to the ALJ's determination that Frisbie's subjective pain allegations were not fully credible, Defendant argues the ALJ properly found Frisbie less than credible based on Plaintiff's inconsistent statements, conservative treatment and noncompliance.  [ECF No. 18-1 at pp. 7-9.]

**A.   There Is No Evidence In The Record To Demonstrate Obesity Is An Impairment**

**1.    Relevant Law**

Social Security Rules provide that obesity is considered a "severe" impairment "when[,] alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."  Titles II and XVI: Evaluation of Obesity, SSR 02-1p (S.S.A), 2002 WL 34686281.   The ruling states: "There is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment.... [the SSA] will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe."  *Id.*

In *Celaya v. Halter,* 332 F.3d 1177 (9th Cir.2003), the Ninth Circuit held that an ALJ should consider the effect of the claimant's obesity in combination with other impairments on the claimant's ability to work even if the claimant does not raise obesity

as a limitation.  *Id.* at 1182.  However, the Ninth Circuit's decision in *Celaya* was premised on the fact that: (1) obesity was implicitly raised in the plaintiff's report of symptoms; (2) the record showed plaintiff's obesity was close to the listing criterion and was a condition that could exacerbate reported illnesses; and (3) the ALJ's personal observation of the claimant and information in the record should have alerted him to the need to develop the record on behalf of the plaintiff who was *pro se*.  *Burch,* 400 F.3d at 682 (citing *Celaya,* 332 F.3d at 1182).

Two years later, in *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005), the Ninth Circuit distinguished *Celaya* by ruling an ALJ's failure to consider obesity at various steps of the sequential evaluation process was not error because: (1) the record did not indicate claimant's obesity exacerbated other impairments; (2) the claimant was represented by counsel; (3) the claimant did not specify the listing she believed she met or equaled; and (4) the claimant failed to provide evidence to support a diagnosis of a listed impairment or evidence of functional limitations due to obesity.  *Id.* at 682-83.

### 2.    Analysis

While it is true the ALJ did not discuss obesity in his decision denying disability benefits, it has also been admitted by Frisbie in his reply brief that he did not list obesity in his application as one of the conditions he believed limited his ability to work.  (AR 244; ECF No. 20 at 7-8.)  Further, neither Frisbie, nor his counsel raised obesity at the hearing before the ALJ.  There are notations in Frisbie's medical records that document his weight and Body Mass Index ("BMI")[4], however there is no diagnosis of obesity in Frisbie's medical records that stem from that information.  Similarly, a need to lose or maintain a certain weight is nowhere addressed in Frisbie's physical therapy treatment notes.  (AR 422-426.)

Given that Frisbie: (1) was and is  represented by counsel; (2) failed on several occasions to allege obesity as a disabling impairment; and (3) has provided no medical

---

[4]*See* October 9, 2012 Orthopaedic Evaluation report of Dr. William Eves at AR 372 listing Frisbie's height as 6 ft., 9 in., weight at 321 lb. and BMI of 34.4.

evidence diagnosing any functional limitations arising from obesity, **IT IS RECOMMENDED** that the Court find the ALJ's failure to address obesity or otherwise categorize obesity as a severe impairment in his decision was not error.  There are neither allegations, nor evidence in Frisbie's record demonstrating his weight is an impairment that significantly limited his physical or mental ability to do basic work activities.  *See Burch,* 400 F.3d 682–83 (ALJ did not commit reversible error by failing to consider obesity where claimant was represented by counsel and failed to present evidence indicating obesity exacerbated impairments or resulted in functional limitations); *Aguilar v. Colvin,* 2014 WL 1653109, at *7 (S.D. Cal. Apr.22, 2014) (ALJ did not err by failing to discuss obesity when claimant was represented by counsel, did not list obesity as a limitation on the  disability application, did not present evidence that obesity impaired her ability to work and did not present evidence showing obesity caused functional limitations).

**B.    The ALJ Did Consider Frisbie's PTSD, OCD and Depression in Determining the RFC**

**1.    Relevant Law**

Social Security Ruling 96-8p states:  "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims: SSR 96-8p (S.S.A), 1996 WL 374184.

**2.    Analysis**

**a)  Severity**

At step three of the sequential evaluation process, the ALJ found Frisbie did not have a mental impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  (AR 22.)  As to Frisbie's mental impairments, the ALJ determined listing 12.04[5] was not met.  The ALJ explained his reasoning as to why

---

[5]**12.04** *Affective disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A

16

Frisbie did not meet the "B" and "C" criteria of listed impairment 12.04 for depression. Specifically, the ALJ found Frisbie did not satisfy "paragraph B" criteria because he only has mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. (AR 23.)  At least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation of an extended duration are required to satisfy "B" criteria. (*Id.*)

Similarly, the ALJ found Frisbie did not meet the listing's "C" criteria because evidence in the record did not support a finding of: repeated episodes of extended decompensation; a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would cause decompensation; or current history of one-or-more years of inability to function outside of a highly supportive living arrangement.  (AR 23.)

Frisbie argues his mental impairments of PTSD, OCD and depression should have been found to be  severe based on his low Global Assessment of Functioning ("GAF") scores, which were listed as 38 by Dr. Olga Caplin (AR481) and 45 by Dr. Gregory Nicholson.  (AR 365.)   However, the ALJ explained in his decision that "the GAF score (as a method of evaluating the severity of impairments) has been specifically rejected by the SSA."  (AR 27.)  Accordingly, the SSA provides in its Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury that:

> "The GAF scale ... is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association.  It does not have a direct correlation to the severity requirements in our mental disorders listings."

65 Fed. Reg. 50746-01, 2001 WL 117632, (Aug. 21, 2000).

In addition, the ALJ's rejection of the GAF scores and finding of non-severity were further supported by the treatment notes of Dr. Caplin and Dr. Nicholson.  *See e.g. Valentine v. Comm'r of Soc. Sec. Admin*. 574 F.3d 685, 692-93 (9th Cir. 2009) (explaining

and B are satisfied, or when the requirements in C are satisfied.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.

17

that a conflict with treatment notes is a specific and legitimate reason to reject a treater's opinion.)  Specifically, in contrast to Frisbie's low GAF score, Dr. Caplin's mental status exam notes indicated:  an alert level of consciousness; all normal orientation; good hygiene, cooperative behavior age/appropriate judgment; fair insight and no visual, tactile or olfactory hallucinations and no delusions.  (AR 479-480.)

Similarly, Dr. Nicholson's treatment notes found Frisbie was: neatly and casually groomed with good eye contact and good interpersonal contact, generally cooperative with no psychomotor agitation or retardation.  Dr. Nicholson further opined that Frisbie's thought processes were coherent and organized, his speech was normal, he was alert and oriented to time, place, person and purpose and appeared to be of average intelligence with insight and judgment grossly intact.  (AR 363-365.)  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.1995).  If the evidence is subject to more than one rational interpretation, the ALJ's conclusion must be upheld. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005).  Accordingly, **IT IS RECOMMENDED** the Court find there was substantial evidence in the record to support the ALJ's determination that Frisbie's mental impairments of PTSD, OCD and depression did not meet or equal the severity of a listed impairment.

### b.)  Consideration of All Impairments

Even though the ALJ did not find Frisbie's mental impairments severe, he explicitly stated that he would nevertheless consider all impairments in his RFC assessment.  The ALJ's decision makes clear:

> "the limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments ... The mental residual functional capacity assessment ... requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p).

(AR 23.)

Contrary to Frisbie's assertions, the ALJ does address Frisbie's OCD (AR 25),

18

history of depression (AR 25) and post traumatic stress disorder (AR 26) in the RFC analysis section of his decision and determines Frisbie has the Residual Functional Capacity to "perform sedentary work as defined in 20 CFR 416.967(a) except the claimant is limited to non-public, simple routine tasks; he can have occasional contact with co-workers and supervisors." (AR 23.)  In preparing the RFC, the ALJ also noted: "*the undersigned took into consideration the claimant's subjective complaints and provided a more restrictive residual functional capacity than assessed by the State agency physicians.*"  (AR 27.) (emphasis added.)  **IT IS THEREFORE RECOMMENDED** that the Court find the ALJ did not err because he did consider the limitations imposed by all of Frisbie's mental impairments, including his PTSD, OCD and depression, in the RFC even though those conditions were properly found not to be severe.

## C.    The ALJ' Credibility Determination of Frisbie Was Properly Supported

### 1.    Relevant Law

The ALJ has a "well-settled role as the judge of credibility." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).  Accordingly, the ALJ's assessment of a claimant's credibility and pain severity should be given "great weight." *Dominguez v. Colvin*, 927 F. Supp. 2d 846, 865 (9th Cir. 2003) (citing *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986)).  The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

The Ninth Circuit has established a two-step analysis for the ALJ to evaluate the credibility of a claimant's testimony regarding subjective pain and impairments.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2008) (citing *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment or impairments that could reasonably be

expected to produce the pain or other alleged symptoms.  *Id.*  Second, if the claimant satisfies the first step and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if he provides "specific, clear and convincing reasons" for doing so.  *Id.*; *see also Parra* v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  These reasons must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n. 3 (9th Cir. 2010) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)).

In weighing the credibility of the claimant's testimony, the ALJ may use "ordinary techniques of credibility determination."  *Id.*  The ALJ may consider the "inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work records, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which he complains."  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

## 2.     Analysis

Frisbie satisfied the first step of the two-step credibility analysis because the ALJ determined that Frisbie presented objective medical evidence of medically determinable impairments that could reasonably be expected to cause his alleged symptoms.  (AR 25.) The ALJ made no finding that Frisbie was malingering, nor did any of the presented evidence suggest that he was malingering.  Nonetheless, the ALJ found that Frisbie's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible".  (AR 25.)  Therefore, the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for discounting Frisbie's subjective pain testimony.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The Court recommends a finding that the ALJ's decision properly set forth "specific, clear and convincing reasons" supported by substantial evidence in the record for rejecting Frisbie's subjective pain testimony to the extent it was inconsistent with the

RFC assessment.  (AR 24.)  The ALJ stated the following reasons for finding Frisbie's testimony was not credible:  (1) the limitations alleged in Frisbie's testimony were inconsistent with his daily activities (AR 25); (2) Plaintiff had a history of noncompliance and conservative treatment (AR 26);  and (3) objective medical evidence did not support the intensity, persistence, and limiting effects of Frisbie's symptoms.  (AR 27.)  The Court will consider the validity of the ALJ's stated reasons below.

### i.    Daily Activities

One basis for the ALJ's credibility determination was the inconsistency between Frisbie's alleged limitations and his daily activities, which is sufficient to support a finding that Frisbie was not entirely credible. *See Lingenfelter*, 504 F.3d at 1040 (in determining credibility, an ALJ may consider "whether claimant engages in daily activities inconsistent with alleged symptoms").  Specifically, daily activities may be grounds for discrediting a claimant's testimony when a claimant "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."  *Fair*, 885 F.2d at 603.  Even when such activities suggest some difficulty functioning, the ALJ may discredit a claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *See Turner*, 613 F.3d at 1225; *Valentine v. Comm'r Social Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

In this case, the ALJ noted Frisbie alleged he had difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, climbing stairs, remembering, completing tasks, concentrating, understanding, following instructions, and getting along with others.  (AR 25.)  However, the ALJ found Frisbie's daily activities of: "maintain[ing] his personal care, feed[ing] the dog, retriev[ing] the mail, let[ting] the dogs out, rid[ing] in a car, and watch[ing] television", in addition to "admitt[ing] to the consultative examiner that he had no difficulty with dressing, bathing or hygiene.  He also could manage his finances [and] He could go out on his own" were inconsistent with the wide-ranging limitations alleged in Frisbie's testimony.  (AR 25.)

Therefore, **IT IS RECOMMENDED** that the Court find it was proper for the ALJ to consider daily activities and conclude that "[s]ome of the physical and mental abilities for social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment .... [thus] the claimant's ability to participate in such activities diminishes the credibility of the claimant's allegations of functional limitations."  (AR 25; *see Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1991) (holding that an indication that a claimant is able to take care of personal needs, prepare meals, do easy housework, and shop for groceries can be seen as inconsistent with a condition that precludes all work activity)*; see also Burch v. Barnhart*, 400 F.3d 676, 681 (2005) (stating that the ALJ may discredit claimant's testimony if a he engages in daily activities involving skills that could be transferred to the workplace).

### ii.      Noncompliance and Conservative Treatment

Other grounds cited by the ALJ in discounting Frisbie's credibility included Frisbie's noncompliance with medication and conservative treatment with physical therapy and medication.  (AR 26.)  Where, as here, the medical record evidences an impairment that can be reasonably expected to produce pain, an ALJ may properly consider the nature of the symptoms, medication, treatment and functional restrictions. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991).

As to medication prescribed, an ALJ may evaluate the credibility of subjective complaints by considering unexplained, or inadequately explained, failure to seek treatment or to follow a prescribed course of treatment. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir.1996).  The ALJ did so in this case and in his decision further explained this reasoning and how it applied to Frisbie, specifically citing Frisbie's February 9, 2012, medical report from Neighborhood Healthcare:

  "The medical records indicate the claimant has been diagnosed with obsessive-compulsive disorder ("OCD") A medical report, dated February 9, 2012, indicated the claimant has a history of OCD ... The claimant also has a history of depression without any suicidal or homicidal ideation.  However the claimant was not compliant with his medications.  This  demonstrates a possible unwillingness to do what is necessary to improve his conditions.  It may also be an indication that the

claimant's symptoms were not as severe as the claimant purported.  The claimant's mental status examinations were normal."

(AR25-26, AR 332.)

As to treatment, the Ninth Circuit has held that the conservative nature of plaintiff's treatment provides a clear and convincing reason for rejecting plaintiff's statements concerning the severity of her impairments. *See Parra v. Astrue,* 481 F.3d 742, 751 (9th Cir.2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.").  In his decision, the ALJ cited multiple medical reports documenting Plaintiff's diagnosis of mild to moderate osteoarthritis in the right knee and moderate osteoarthritis in the left knee and subsequent conservative treatments with physical therapy, a home exercise program, pain medication and supartz injections.  (AR 26, Exhs. C2F, C5F, C8E, C9F, C10F.)   The ALJ made it clear that "[a]lthough the failure to follow prescribed treatment without a good reason can be a basis for finding that the claimant is not disabled, the undersigned considered it as a credibility factor in this case and does not base the ultimate decision in this case on this factor alone."  (AR 26.)  Thus, **IT IS RECOMMENDED** that the Court find the ALJ properly considered Frisbie's noncompliance and conservative treatment as factors in his credibility assessment.

### iii.   Medical Evidence

Another basis for the ALJ's credibility determination was that the medical records did not support the alleged intensity, persistence, and limiting effects of Frisbie's symptoms.   (AR 27.)  When the ALJ finds that medically determinable impairments could reasonably be expected to cause a claimant's alleged symptoms, the ALJ may not reject a claimant's testimony solely based on inconsistent medical evidence.  *See Reddick*, 157 F.3d at 722 (finding that an ALJ cannot reject a claimant's testimony simply because it is unsupported by objective medical evidence).  However, when assessing a claimant's credibility, the ALJ may consider inconsistent medical evidence as a factor in his credibility analysis.  *See Lingenfelter*, 504 F.3d at 1040 (in determining credibility, the ALJ may consider "whether the alleged symptoms are consistent with the medical

evidence").

The ALJ found that the medical evidence did not support the alleged severity of Frisbie's symptoms. (AR 27.) In coming to this conclusion, the ALJ analyzed all the medical records submitted "including medical records dated prior to the relevant time period and subsequent to the hearing. (Exhs. C1F-C12F)." (AR 25.) The ALJ noted that the opinions of the State agency medical and psychological consultants all assessed claimant as able to perform a range of work at the light or less than light exertional level. (AR 27.) The ALJ also noted that the opinion of psychiatric consultative examiner, Dr. Nicholson, found Frisbie's mental limitations as mild to moderate. (AR 27.) The ALJ added:

> "The claimant's subjective complaints are less than fully credible and the objective medical evidence does no*t* support the alleged severity of symptoms. ... the claimant [w]as not credible when asked to describe his limitations; the claimant alleged it was painful to even sit for 15 minutes. His allegation was not supported by medical evidence. The claimant alleged he could not stand independent of his cane or his leg might give out; however, the claimant could no specify any particular time this has occurred."

(AR 27.)

Accordingly, the ALJ properly considered inconsistencies between Frisbie's subjective allegations and medical records as one of several factors in his credibility assessment. **IT IS RECOMMENDED** that the Court find there was a sufficient basis for the ALJ to discount Frisbie's subjective pain testimony. **IT IS FURTHER RECOMMENDED** that the Court find the ALJ's credibility determination properly set forth three "specific, clear and convincing" reasons supported by substantial evidence in the record.

## V. CONCLUSION

Having reviewed the matter, the undersigned Magistrate Judge recommends that Frisbie's motion for summary judgment be **DENIED** and that Commissioner's cross-motion for summary judgment be **GRANTED**. This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge

assigned to this case, pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **April 13, 2016**, any party to this action may file written objections with the Court and serve a copy to all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **April 27, 2016.**

DATED:  March 29, 2016

Hon. Bernard G. Skomal
U.S. Magistrate Judge
United States District Court

25